UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VAMED MANAGEMENT UND ) <br> SERVICE GMBH, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> GABONESE REPUBLIC, ) <br> ) <br> Respondent. ) | Civil Case No. 22-3737 (RJL) |

**MEMORANDUM OPINION**
March 12, 2024 [Dkt. #12]

Petitioner VAMED Management und Service GMBH ("VAMED"), an Austrian company, sues to confirm an arbitration award against the Gabonese Republic ("Gabon"). Gabon has not filed an appearance in this matter or otherwise participated in the confirmation proceedings. Before the Court is VAMED's motion for a default judgment and for confirmation of the underlying award. For the reasons stated herein, VAMED's motion is **GRANTED**.

## BACKGROUND[1]

VAMED is a global provider of facility-management services for hospitals and other healthcare-related institutions. Pet. Confirm Arbitral Award [Dkt. #1] ("Pet.") ¶ 3. Between 2001 and 2013, VAMED entered into nine contracts with Gabon to provide management, maintenance, and training services in several of Gabon's hospitals. *Id.* ¶ 10.

---

[1] Because Gabon has not appeared in this action, the Court relies on VAMED's account of the factual history of the case.

Six of these contracts contained dispute resolution clauses providing for arbitration in Geneva, Switzerland, in accordance with the arbitration rules of the International Chamber of Commerce ("ICC"). *Id.* ¶¶ 14–20. The remaining contracts called for arbitration in either Zurich, Switzerland, or the Hague, Netherlands, but otherwise contained materially identical arbitration clauses. *Id.* ¶¶ 21–23. Although VAMED upheld its end of the hospital contracts, Gabon failed to pay VAMED fully for its services. *Id.* ¶ 10. Thus, in 2018, VAMED initiated three arbitrations in the ICC's Court of Arbitration, one in Geneva, one in Zurich, and one in the Hague. *Id.* ¶ 25. By agreement of the parties, the proceedings were consolidated into a single arbitration before a three-member panel seated in Zurich, Switzerland. *Id.* ¶ 26.

While the consolidated arbitration forged ahead, VAMED and Gabon entered into another agreement (the "protocol") to try to resolve their dispute over the hospital contracts. *Id.* ¶ 11. Under the protocol, which likewise called for arbitration in Zurich in accordance with the ICC's rules, Gabon agreed to a payment schedule governing its outstanding debt to VAMED. *Id.* ¶¶ 12, 24. After Gabon began to make good on its payments, the parties elected to suspend arbitration in early 2020. *Id.* ¶ 13. Soon thereafter, however, Gabon fell behind on its payment schedule, and then failed to make any payments at all for almost a year. *Id.* Consequently, VAMED requested, and the tribunal agreed, to resume the arbitration proceedings in Zurich. *Id.* At no point during the arbitration did Gabon challenge the arbitral tribunal's jurisdiction or deny that it was bound by the hospital contracts or the protocol, to include the arbitration agreements contained in those documents. *Id.* ¶ 28.

On March 21, 2022, the arbitral tribunal found in VAMED's favor and issued an award ordering Gabon to pay two sums: €2,581,870.64 with interest at 8% yearly starting from October 14, 2021, until full payment, which represents Gabon's outstanding balance on the hospital contracts; and €33,453.18 with interest at 5% yearly from receipt of the award until full payment, representing Gabon's contribution to VAMED's costs of arbitration. Pet. Ex. A, Final Award [Dkt. #1-2] ("Final Award") ¶ 150. The tribunal also ordered VAMED to pay for a portion of Gabon's legal costs as well, issuing an award to Gabon of €5,000 with interest at 5% per annum. *Id.* Offsetting the €5,000 to Gabon with the amounts granted to VAMED, the total sum in euros awarded to VAMED was €2,610,323.82, exclusive of post-award, prejudgment interest. To date, Gabon has not paid any part of the amount due under the arbitral award. Pet. ¶ 31.

VAMED filed this suit to confirm the award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), an international treaty ratified by the United States and codified in the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §§ 201–208. VAMED served Gabon with notice of the action and a copy of the petition and summons through a DHL delivery from the Clerk of Court, who subsequently certified that these documents were delivered to Gabon on February 27, 2023. *See* Proof of Service [Dkt. #9]. Sixty-five days later, still with no response to its petition, VAMED filed an affidavit for default against Gabon, which the Clerk entered. *See* Request for Entry of Default [Dkt. #10]; Clerk's Entry of Default [Dkt. #11]. VAMED's motion for default judgment and confirmation of the award followed. *See* Mem. Supp. Mot. Default J. & Confirmation of Arbitration Award [Dkt. #12-1] ("Mot.").

## LEGAL STANDARD

District courts are empowered to enter default judgment against a party that fails to defend or plead its case. *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980); *see, e.g.*, Fed. R. Civ. P. 55. When a default judgment is sought under the Foreign Sovereign Immunities Act ("FSIA"), the petitioner must "establish[] … [its] right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This requirement "imposes a duty on [the] court[] to not simply accept a complaint's unsupported allegations as true, and obligates courts to inquire further before entering judgment[.]" *Firebird Glob. Master Fund II Ltd. v. Republic of Nauru*, 915 F. Supp. 2d 124, 126 (D.D.C. 2013) (internal quotation marks omitted). As part of this inquiry, "[a] court retains its affirmative obligation" to ensure it has subject matter jurisdiction over the action and personal jurisdiction over the defaulting sovereign. *Compagnie Sahélienne d'Entreprise v. Republic of Guinea*, 2021 WL 2417105, at *2 (D.D.C. June 14, 2021) (internal quotation marks omitted). Yet while a default judgment can be harder to obtain under the FSIA than in the ordinary case, Section 1608(e) does not "demand more or different evidence than [the court] would ordinarily receive." *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017) (internal quotation marks omitted). To that end, a court may rely on affidavits, declarations, and other documentary evidence to determine whether the petitioner has satisfied its burden for a default judgment. *See Levy v. Republic of Guinea*, 2020 WL 3893019, at *3 (D.D.C. July 10, 2020).

## DISCUSSION

VAMED may obtain a default judgment against Gabon if (1) the Court has subject

matter jurisdiction over the action, (2) personal jurisdiction is properly exercised over Gabon, (3) satisfactory evidence establishes VAMED's right to relief, and (4) VAMED is entitled to the damages it seeks. *See Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 75 (D.D.C. 2017). All four of these requirements are met here.

### I. Subject Matter Jurisdiction

The FSIA supplies the only "legal vehicle by which a plaintiff may bring suit against a foreign state." *Levy*, 2020 WL 3893019, at *3 (internal quotation marks omitted). It confers subject matter jurisdiction on U.S. federal courts over "any nonjury civil action against a foreign state ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a).

The first three of these jurisdictional conditions are easily met, requiring almost no discussion. This is a nonjury civil action. *See Braun*, 228 F. Supp. 3d at 75. Gabon is a foreign state. VAMED has claimed in personam relief because the Court is exercising "personal jurisdiction over defendant[] as [a] legal person, rather than property." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 65 (D.D.C. 2010); *see also infra*.

The only remaining question is whether Gabon is entitled to immunity. The FSIA generally grants foreign governments immunity from the jurisdiction of American courts. 28 U.S.C. § 1604. But there are exceptions to this rule, *id.* §§ 1605, 1607, which, if established, each furnish a "basis for obtaining jurisdiction over a foreign state in our courts," *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021) (internal quotation marks omitted). VAMED invokes two of those exceptions here, although the Court need address only one: the so-called "arbitration exception," which

5

provides for federal court jurisdiction

> in any action brought to enforce an [arbitration] agreement made by the foreign state … or to confirm an award made pursuant to such an agreement to arbitrate, if … the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6).  Distilled, the arbitration exception requires establishing three "jurisdictional facts": "the existence of an arbitration agreement, an arbitration award[,] and a treaty governing the award." *Stileks*, 985 F.3d at 877. The petitioner bears the burden of producing evidence to support these facts, while the sovereign, in rebuttal, "must establish the absence of the factual basis by a preponderance of the evidence." *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204–205 & n.3 (D.C. Cir. 2015) (internal quotation marks omitted).

VAMED has met its burden of production. It has furnished copies of the hospital contracts and the protocol, each containing the relevant arbitration agreements, as well as the arbitral tribunal's decision. *See* Pet. Exs. B–K [Dkt. ##3–12]; Final Award. These documents are regularly said to demonstrate the first two jurisdictional facts, and Gabon—which has not appeared in this case—does not dispute their authenticity or offer any other rebuttal evidence. Nor is there any doubt that the New York Convention, a multilateral treaty ratified by the United States as well as the place where the tribunal sat, Switzerland, governs VAMED's award. *See Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999); *Global Distressed Alpha Fund I LP v. Red Sea Flour Mills Co.*, 725 F. Supp. 2d 198, 203 (D.D.C. 2010). Accordingly, VAMED's claims fall within the

FSIA's arbitration exception and this Court has subject matter jurisdiction over them.

## II.   Personal Jurisdiction

Next, the FSIA permits district courts to exercise personal jurisdiction over a foreign sovereign so long as two conditions are present. *See* 28 U.S.C. § 1330(b); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) (explaining that "foreign states are not persons protected by the Fifth Amendment," leaving no need to conduct a minimum contacts analysis before exercising personal jurisdiction under the FSIA). First, subject matter jurisdiction must exist over the claims at issue, which it does here. *See supra*. Second, service upon the foreign state must be properly effected pursuant to 28 U.S.C. § 1608(a). Section 1608(a), in turn, "prescribes four methods of service, in descending order of preference. Plaintiffs must attempt service by the first method (or determine it is unavailable) before proceeding to the second method, and so on." *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008).

The first two methods of service are unavailable here, as VAMED has no special service arrangement with Gabon, and the United States and Gabon share no treaty providing for service in civil matters. *See* 28 U.S.C. § 1608(a)(1)–(2); *see also* Second Ryan Decl. [Dkt. #12-3] ¶ 3. At that point in the service hierarchy, VAMED was entitled to proceed pursuant to Section 1608(a)(3), which requires

> sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs.

28 U.S.C. § 1608(a)(3). This VAMED did, by causing the Clerk of Court to send the

required documents, along with a French translation of them, through a DHL shipment to Gabon's Minister of Foreign Affairs. The shipment was delivered and signed for on February 27, 2023, as confirmed by the Clerk, so Gabon had until sixty days later—April 28, 2023—to respond, although it did not. *See id.* § 1608(d). Because these efforts establish proper service under Section 1608(a)(3), the Court has personal jurisdiction over Gabon.

### III. Default Judgment on VAMED's Claim

Turning to the merits of VAMED's request for a default judgment, the Court finds that satisfactory evidence entitles VAMED to confirmation of the award. "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution,' ... the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards[.]" *Belize Soc. Dev., Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). Under that statute, which codifies the New York Convention, a court "shall confirm" an arbitral award unless one (or more) of the Convention's seven grounds for denying confirmation is present before it. 9 U.S.C. § 207. For five of those grounds, the party resisting confirmation must submit "proof" that one of those grounds applies before a court can set aside the award. N.Y. Convention, art. V(1); *see id.* (providing that "enforcement of the award may be refused, at the request of the party against whom it is invoked, *only if* that party furnishes ... proof" that the award or underlying agreement were in certain respects improper (emphasis added)); *Gold Reserve, Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015) (explaining that the burden of proof

8

is on the party opposing confirmation). The remaining two grounds permit a court to deny confirmation of the award sua sponte if it finds that the dispute is not subject to arbitration under the laws of the country in which confirmation is being sought, or if enforcement of the award would violate that country's public policy. N.Y. Convention, art. V(2).

On this record, there are no grounds for refusing to enforce the arbitral award. Gabon has not made an appearance in this case and has therefore offered no argument, much less "proof," for why the award should not be enforced.[2] In addition, the underlying dispute—a run-of-the-mill commercial quarrel between contracting parties—"is surely capable of settlement by arbitration in the United States." *Africard Co. v. Republic of Niger*, 210 F. Supp. 3d 119, 127–128 (D.D.C. 2016); *accord Mediso Med. Equip. Dev. Servs., Ltd. v. Bioscan, Inc.*, 75 F. Supp. 3d 359, 364 (D.D.C. 2014). Nor is there any reason to believe that enforcing the award would offend U.S. public policy, especially given our "emphatic federal policy in favor of arbitral dispute resolution," which "appl[ies] with special force in the field of international commerce." *Belize*, 668 F.3d at 727 (internal quotation marks omitted). Under these circumstances, and in light of VAMED's compliance with the FAA and Convention's procedural and documentary requirements,[3]

---

[2] The Court, too, sees no reason for refusing to enforce the arbitral award based on its own review of the record. *See Sterling Merchant Fin. Ltd. v. Republic of Cabo Verde*, 261 F. Supp. 3d 48, 53 (D.D.C. 2017).

[3] The Convention provides that a party seeking enforcement of an arbitral award must "supply: (a) The duly authenticated original award or a duly certified copy thereof; [and] (b) The original agreement [in which the parties agreed to arbitration] … or a duly certified copy thereof." N.Y. Convention, art. IV(1). In addition, the Convention requires the party to submit a certified translation of the award if the award is written in a foreign language. *Id.*, art. IV(2). Separately, the FAA provides the relevant timing for confirmation petitions brought under the New York Convention, requiring a petitioner to file such a petition "[w]ithin three years after" the award is made. 9 U.S.C. § 207.

VAMED has demonstrated to the Court's satisfaction that a default judgment confirming the award is warranted.

## IV. Calculation of the Award Amount

All that remains is to calculate the total amount due to VAMED under the arbitral award. The tribunal's final order directed Gabon to pay VAMED an award consisting of two sums:

- €2,581,870.64 as compensation owed under the hospital contracts, with interest at 8% per annum starting from October 14, 2021, until full payment; and

- €33,453.18 as compensation for legal costs incurred, with interest at 5% per annum starting from the date of the award (March 21, 2022) until full payment.

Final Award ¶ 150(i), (iv). The tribunal also ordered VAMED to pay Gabon a total of €5,000 in legal costs, likewise at an interest rate of 5% yearly. *Id.* ¶ 150(v). Offsetting the €5,000 owed to Gabon with the sums granted to VAMED, the final amount awarded to VAMED was €2,610,323.82, exclusive of interest accrued. According to VAMED, Gabon has yet to make any payments toward the arbitral award, Pet. ¶ 31, nor has VAMED paid its €5,000 obligation to Gabon. *Cf. Perenco Ecuador Ltd. v. Republic of Ecuador*, 2023 WL 2536368, at *5–6 (D.D.C. Mar. 16, 2023) (declining to apply a proposed setoff to the

---

VAMED has satisfied these procedural conditions. It has submitted the certified English translations of all required documents as part of its confirmation petition. *See* Final Award; Pet. Exs. B–K (providing copies of the hospital contracts and the protocol); *see also* Ryan Decl. [Dkt. #1-2] (affirming that the attached Final Award "is a duly certified, true and correct copy" of the award and also includes "a certified translation of the French portions of the Award to English"; additionally affirming that Exhibits B through K are "true and correct cop[ies]" and "certified translation[s] [of the contracts] from the original French to English"). And because the award was rendered on March 21, 2022, VAMED is well within the FAA's three-year limitations period.

arbitral award where "the parties dispute the validity, finality, or amount of the setoff," which is not disputed here).

VAMED requests that, in granting judgment to it, the Court convert the amount of the award to U.S. dollars. *See* Mot. 11. "Conversion of foreign currency amounts into dollars at judgment is the norm, rather than the exception." *Africard*, 210 F. Supp. 3d at 128 (internal quotation marks and ellipses omitted). When making that conversion, however, courts must do so "at such rate as to make the creditor whole and to avoid rewarding a debtor who has delayed in carrying out the obligation." Restatement (Third) of Foreign Relations Law § 823(1). Thus, "if the foreign currency has depreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of injury or breach." *Id.* § 823, cmt. c. If, on the other hand, "the foreign currency has appreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of judgment." *Id.*; *accord Africard*, 210 F. Supp. 3d at 128; *G.E. Transp. S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 139–140 (D.D.C. 2010).

The Treasury Department "provides the U.S. government's authoritative exchange rates" on a quarterly basis. U.S. Dep't of Treas., Treasury Reporting Rates of Exchange, https://fiscaldata.treasury.gov/datasets/treasury-reporting-rates-exchange/treasury-reporting-rates-of-exchange (last updated Mar. 6, 2024). For the quarter ending on December 31, 2023, which applies to a judgment on this date, one U.S. dollar equals 0.905 euro. *Id.* For the quarter ending on December 31, 2021, which would have applied to the arbitral award issued on March 21, 2022, one U.S. dollar equaled 0.882 euro. *Id.* As the euro has depreciated since the award was made, the Court will use the rate applicable on

11

the date of the award—the higher amount.

VAMED also requests a final calculation that includes prejudgment interest accruing from the date of the award until this judgment. It asks the Court to impose such prejudgment, post-award interest at the rates specifically provided in the arbitral tribunal's final order—namely, 8% interest per annum on the first sum to VAMED and 5% interest per annum on the second sum. The Court agrees that these rates are appropriate, as they are "consistent [not only] with the underlying arbitration award," *Stileks*, 985 F.3d at 881, but also with the objectives of applying prejudgment interest in the first place: to "promote[] settlement and deter[] any attempt [by the respondent] to benefit unfairly from … delay," *id.* (internal quotation marks omitted). *See also BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233, 251 (D.D.C. 2015) (imposing prejudgment interest at the rate specified by the arbitral tribunal).

The results of these calculations, taking into account the applicable exchange rate and interest rates, are below.[4]

| Sum Awarded (Euros) | Daily Interest Accrued | Days of Interest Accrued | Total Interest Accrued | Total With Interest (Euros) | Total With Interest (USD) |
|---|---|---|---|---|---|
| 2,581,870.64 | 565.889455 | 880 days | 497,982.721 | 3,079,853.36 | 3,491,897.23 |
| 28,453.18[5] | 3.89769589 | 722 days | 2,814.13643 | 31,267.3164 | 35,450.4721 |

Adding these amounts together, the total award is $3,527,347.70 as of today's judgment.

---

[4] For each of the two sums awarded, the Court used the following formula, then added the amounts to reach the overall total award: ((((Sum Awarded x Applicable Interest Rate) / 365 days) x Days of Interest Accrued) + Sum Awarded) / 0.882

[5] This figure represents the legal costs awarded to VAMED by the tribunal—€33,453.18—less the €5,000 that VAMED owes to Gabon in return. Both are subject to the same 5% annual interest rate.

As is mandated by 28 U.S.C. § 1961, VAMED is also entitled to post-judgment interest on this award at the federal rate set out in that statute, until full payment. *See OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 2019 WL 2185040, at *6 (D.D.C. May 21, 2019).[6]

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** VAMED's motion for a default judgment against Gabon and confirms the arbitral award in the amount of $3,527,347.70. An order consistent with this decision accompanies this Memorandum Opinion.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge

---

[6] VAMED additionally seeks "all reasonable attorneys' fees and costs incurred to bring this proceeding," Mot. 11, but it has not provided the Court with a motion for fees and costs, or its billing records. If VAMED believes it is entitled to that relief, it may bring an appropriate motion.